### WICKERSHAM et al. v. RICKER.

(Circuit Court of Appeals, Third Circuit.    November 3, 1893.)

#### No. 11.

SPECIFIC PERFORMANCE—SALE BY TRUSTEE —ADEQUACY OF PRICE—EVIDENCE.
In determining whether a sale by a trustee was fair, and free from collusion, a subsequent offer by the purchaser's disappointed competitors, who formerly offered a much smaller amount, and absolutely refused to give more, is no true criterion of value; and no weight should be attached to their statements of a secret purpose to give a much larger sum, rather than lose the property.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

In Equity.    Suit by Edward P. Ricker against Annie T. Wickersham and the Guarantee Trust & Safe-Deposit Company, adminis-

trators, for specific performance of a contract. There was a decree for complainant, and defendants appeal. Affirmed.

Thomas A. Fahy, for appellants.

Richard C. Dale, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and WALES, District Judge.

ACHESON, Circuit Judge. The bill of complaint here set out that on November 1, 1892, the plaintiff made a contract in writing with the defendants, Annie T. Wickersham and the Guarantee Trust & Safe-Deposit Company, administrators cum testamento annexo of the estate of John B. Wickersham, deceased, and authorized, by virtue of his will, to sell and convey all or any part of the real estate late of the decedent, whereby the defendants agreed to sell and convey, and the plaintiff to buy, all the interest which was of the said John B. Wickersham, and now is of his estate, in the water and springs known as "Poland Silica Water," situate on the Colomy farm, in Poland, in the state of Maine, for the price of $2,000; the title to be made in a reasonable time; the sale to include the rights of trade-mark in the water, if any, and also the assignment of a certain agreement between one Colomy and Wickersham dated November 13, 1883; that when the contract was signed the plaintiff paid to the defendants, on account of the purchase price, $150; that the plaintiff caused to be prepared a proper deed of conveyance, which the defendants executed, but that, since the execution of the deed, the defendant Annie T. Wickersham, being instigated by persons having rival interests, had notified the other defendant not to deliver the deed; that the plaintiff was ready, and had offered, to pay the balance of the purchase price, but the defendants had refused to deliver the deed; and the bill prayed that the defendants be decreed, upon the payment of the balance of the purchase money, to deliver to the plaintiff a deed of conveyance for the property embraced in the contract.

The answer of the Guarantee Trust & Safe-Deposit Company, admitting the material averments of the bill, stated that its refusal to deliver the deed was because of a notice in writing from its codefendant, forbidding the consummation of the sale. The answer of Annie T. Wickersham, after admitting the material allegations of the bill, set up as a defense, and charged, a fraudulent combination between the plaintiff and Somers S. Pearson, the agent of the defendants for the sale of the property, whereby the contract of sale had been made at an undervalue at a time when not less than $4,000 could have been obtained from H. K. Wampole & Co., rival bidders, and owners of the land out of which the springs flowed, and of the undivided interest in the water. The court below found that this charge of fraud was not sustained by the proofs. We have considered the case with great care, and entirely concur in that conclusion. In our judgment, there is no evidence in this record to warrant the charge of fraud. The specific defense to the bill set up in the answer of Mrs. Wickersham

altogether failed. But the court below, not keeping strictly within the pleadings, very properly investigated the merits of the case upon the whole proofs, and considered the question whether the sale was a conscionable one,—such as a court of equity should enforce,—reaching a conclusion favorable to the plaintiff in the bill. That question we have fully considered, with the same result.

The material facts disclosed by the proofs are these: In the summer of 1892, H. K. Wampole & Co., manufacturing chemists in the city of Philadelphia, purchased the Colomy farm, subject to the Wickersham rights in the springs, for the sum of $6,000. The Wickersham estate owned the undivided one-half of the springs. Shortly after their purchase, in September, 1892, H. K. Wampole & Co. had an interview at Poland with Mr. Pancoast, the attorney of the Wickersham estate, with reference to the purchase by them of the Wickersham interest. They represented to Mr. Pancoast that the land, with its improvements, exclusive of the water rights, was worth $5,000; and they submitted figures to show that the Wickersham interest was not worth more than $1,000, and this they offered to give for it. Mr. Pancoast testifies (and no doubt truly) that Mr. Wampole said "that if we did not take this offer of one thousand dollars they were going on to establish their own trade-mark, and sell the water, and that they did not care what we did with our interest." Upon his return to Philadelphia, Mr. Pancoast communicated this offer to those beneficially interested in the Wickersham estate; and, among themselves, they all agreed to accept from $2,000 to $2,500 for the property. Mr. Pancoast then employed Mr. Pearson to find a purchaser, and directed him to notify H. K. Wampole & Co. This Mr. Pearson did, by letter. Mr. Wampole, in company with Mr. Koch, another member of the firm, then called on Mr. Pearson, and, after some conversation, they withdrew their offer of $1,000. Afterwards, Mr. Pearson, with the approval of Mr. Pancoast, by letter dated October 27, 1892, informed the plaintiff, who owned a tract of land adjoining the Colomy farm, that the Wickersham interest in the Colomy springs had been put into his hands for sale, and inviting him to become a purchaser. Thereupon, the plaintiff came to Philadelphia, and negotiations took place between him and Mr. Pearson, Mr. Pancoast, and one or more officers of the Guarantee Trust & Safe-Deposit Company. Eventually, the plaintiff offered $2,000, which was accepted, subject to the approval of Mrs. Annie T. Wickersham, the widow and coadministrator, who at the time could not personally be seen. The contract of sale was then signed by the plaintiff and the trust company, and the plaintiff paid $150 on account. Subsequently, Mrs. Wickersham signed the contract of sale, and also executed the deed of conveyance. There is some conflict of testimony as to what was said at the interview between Mr. Pearson and Mrs. Wickersham before she signed the contract; but we are entirely satisfied that no misrepresentation was made to her, and that she acted deliberately, and of her free will, exercising her own independent judgment.

It appears that, while the negotiations between the plaintiff and those representing the Wickersham estate were pending, Mr. Wampole was in the place of business of the Guarantee Trust & Safe-Deposit Company, and there learned that the plaintiff was in Philadelphia, negotiating for this purchase. Yet H. K. Wampole & Co. refrained from increasing their offer, and did not do so until after the contract with the plaintiff had been signed by all parties. Then they put themselves in communication with Mrs. Wickersham, and offered $4,000. Mr. Wampole and Mr. Campbell, another member of the firm, now testify that they always would have given $6,000 for the Wickersham interest. But it is more than probable that they would have acquired it upon their own terms, had it not possessed special value to the plaintiff, as the adjoining proprietor.

It is said that, when the offer of $1,000 was withdrawn, there was an understanding that Mr. Pearson was to get from the Wickersham heirs their lowest price, and report it to H. K. Wampole & Co. But Mr. Pearson had no such understanding. He entered into no such engagement, and H. K. Wampole & Co. had no good reason to expect any further communication from him. In fact they had succeeded in thoroughly persuading both Mr. Pearson and Mr. Pancoast that $1,000 was their ultimatum. Mr. Pearson was under no obligation to report to H. K. Wampole & Co. the plaintiff's offer, and it is very doubtful whether it would have been good policy for him to do so. It was well said by the learned judge below that, had Mr. Pearson ventured upon such a course of dealing with the plaintiff, he might have driven him off altogether, and then the defendants would have been left at the mercy of H. K. Wampole & Co.

There is no satisfactory evidence that the sum of $2,000 was an inadequate price. The subsequent offer made by disappointed competitors, who doubtless were particularly chagrined that the property had fallen into the plaintiff's hands, does not afford any true criterion of value. Nor, under the circumstances, is any weight to be given to what these persons now say it was their secret purpose to give, rather than lose the property. It has been declared not to be a good ground, in equity, for setting aside a private sale made by a trustee, that a higher price has been offered. Harper v. Hayes, 2 De Gex, F. & J. 542. And in Goodwin v. Fielding, 4 De Gex, M. & G. 90, an agreement for the sale of a leasehold by an executrix was specifically enforced against her, notwithstanding she was subsequently offered, and had accepted, a price nearly double that which the plaintiff was to give. Lord Justice Knight Bruce there said:

"I think that it would be wrong and mischievous to create or encourage such a notion as that a trustee for sale may avoid a fair and unobjectionable contract by entering into a subsequent contract for a higher price."

We are quite convinced of the plaintiff's perfect integrity in the transaction, and of the entire fairness of the contract he seeks to have enforced.

Upon the facts proved, we are clearly of the opinion that the circuit court was right in specifically enforcing the contract which was the foundation of the bill, and therefore its decree is affirmed.